BURKE, Respondent, vs. UNIVERSAL GRANITE QUARRIES COMPANY and others, Appellants.

*April 4—May 1, 1923.*

*Corporations: Pledge of corporate stock: Voting power of pledgee: Injunction: Misjoinder of causes of action: Different relief against different defendants: Parties.*

1. Assuming that the right to vote corporate stock passes to a pledgee thereof as the legal holder, such pledgee cannot vote to terminate a contract for the performance of which by the pledgor the stock was transferred as collateral security, as such action is in direct violation of the intent of the parties and the purpose of the pledge.

2. A complaint in an action against a pledgee of corporate stock and his assignee to enjoin a transfer of the stock and protect the rights of plaintiff in relation thereto, which shows that the stock was transferred by the original pledgee with plaintiff's consent and that such pledgee made no claim thereto, stated no cause of action against him.

3. In a suit in equity growing out of a series of transactions affecting all the defendants, it is not essential that the relief prayed for be identical in order that there be no misjoinder of causes of action.

4. Where it is obvious that a corporation, as its directorate is constituted, would not join in a suit in equity by a stockholder to enjoin a transfer of stock and protect his rights, it was properly made a defendant.

Burke v. Universal Granite Quarries Co. 180 Wis. 520.

APPEAL from an order of the circuit court for Milwaukee county: WALTER SCHINZ, Circuit Judge. *Affirmed in part; reversed in part.*

Suit in equity to restrain defendants from transferring certain stock, to declare a trust, and for the appointment of a receiver pending litigation.

The amended complaint, after alleging the foreign corporate existence of the defendants *Universal Granite Quarries Company* and the *Wisconsin Granite Company,* alleges:

"That at all times hereinafter mentioned the plaintiff was, and now is, the owner of all of the outstanding stock of the *Universal Granite Quarries Company,* and that he paid valuable consideration for the same.

"That on or about the 4th day of October, 1919, your plaintiff entered into an oral agreement with the defendant *Wisconsin Granite Company,* through its agent, *John J. Sloan,* at the city of Chicago, pursuant to which the said *Wisconsin Granite Company* promised and agreed to finance the *Universal Granite Quarries Company,* for and in consideration of a payment by the *Universal Granite Quarries Company* to the said *Wisconsin Granite Company* of two thirds of the earnings of said company, it being understood and agreed that your plaintiff was to draw a salary of thirty-six hundred ($3,600) dollars per year during the term of a certain lease upon the American Granite Company to the said *Universal Granite Quarries Company,* which said lease expires in 1925, out of the net profits of the *Universal Granite Quarries Company,* before the defendant *Wisconsin Granite Company* should share in any division of profits. That the said defendant *Wisconsin Granite Company,* through its agent, *John J. Sloan,* agreed to the terms of said contract, and that the parties thereto thereupon proceeded to operate under said agreement and continued to operate thereunder until on or about the 30th day of November, 1921.

"That as security under this agreement your plaintiff delivered in trust to the defendant *John J. Sloan,* as the agent of the said *Wisconsin Granite Company,* two thirds of the outstanding stock of the *Universal Granite Quarries Com-*

*pany,* to wit, approximately five hundred thirteen and one-half (513½) shares, as this plaintiff is informed and believes.

"That pursuant to said agreement, and in consideration of all clerical work to be performed by the *Wisconsin Granite Company* on behalf of the *Universal Granite Quarries Company,* the *Universal Granite Quarries Company* promised and agreed to pay to the *Wisconsin Granite Company* a consideration of five (5¢) cents per ton on crushed rock or rubble stone, or grout, and five (5¢) cents per square yard on paving block. That the parties to said agreement did operate under it and continue to so operate under it until the 30th day of November, 1921, as your plaintiff is informed and believes.

"That pursuant to the request of the defendant *Wisconsin Granite Company* and in consideration of the financing by it of the *Universal Granite Quarries Company,* the said *Universal Granite Quarries Company* consented to and did elect four directors to its board of directors, consisting of five directors, all of which four directors were either officers or employees of the defendant *Wisconsin Granite Company.*

"That at the request of the defendant *Wisconsin Granite Company,* through its agent, *John J. Sloan,* your plaintiff consented to the transfer on the corporate records of the *Universal Granite Company* of approximately five hundred thirteen and one-half (513½) shares, as your plaintiff is informed and believes, from the name of this plaintiff, to the defendant *William A. Armstrong,* the son-in-law of the defendant *John J. Sloan.* That the plaintiff received no consideration for such transfer of stock, nor did the defendant *William A. Armstrong,* or any other person, pay any consideration for such transfer and for the stock so received; and that the defendant *William A. Armstrong,* acting in behalf of the said *John J. Sloan* and the *Wisconsin Granite Company,* is not a purchaser for value of said stock, and at all times herein mentioned had, and now has, full knowledge of the agreement between your plaintiff and the said *Universal Granite Quarries Company* and the said *Wisconsin Granite Company.*

"That on or about November 30, 1921, a special meeting

of the directors of the said *Universal Granite Quarries Company* was held in the city of Chicago, Illinois. That at said meeting a resolution was passed, over the opposition of your plaintiff, discontinuing the contract with the *Wisconsin Granite Company* hereinbefore set out, and also discontinuing the salary to your plaintiff provided for in said agreement. That thereupon your plaintiff gave immediate notice to the defendant *Wisconsin Granite Company* by conferring with its agent, *John J. Sloan,* that he was dissatisfied with the action of the board of directors of the *Universal Granite Quarries Company,* taken over his protest, and insisted to the said *John J. Sloan* that the contract then in existence should be carried out. That the said *John J. Sloan* stated that he had full knowledge of the action taken by the board of directors of the *Universal Granite Quarries Company* and that it had·his personal approval, and that the *Wisconsin Granite Company* no longer intended to perform under the agreement it had entered into.

"That the defendant *Universal Granite Quarries Company* made a net profit of approximately twenty thousand ($20,000) dollars in the year 1920, and, as your plaintiff is informed and believes, also made a net profit in the year 1921. That your plaintiff has never received any part of the profits of the said *Universal Granite Quarries Company,* although he in fact owns all of the outstanding stock of said corporation, excepting a certain dividend paid to this plaintiff during the month of December, 1920, in the sum of approximately one thousand nine hundred fifty ($1,950) dollars. That your plaintiff has received no salary under the agreement hereinbefore set out since the 30th day of November, 1921.

"That your plaintiff fears that as the majority of the issued stock of record is in the name of the defendant *Armstrong,* and as he is a director and controls and dominates the said board of directors of the *Universal Granite Quarries Company,* that whatever relief this court may finally decree, if any, in favor of your said plaintiff, will be rendered nugatory by the action of said board of di-ˉ rectors pending this suit, and that the assets of said corporation may be dissipated pending this suit.

"Wherefore your plaintiff prays:

"*First,* that an order be made pending this suit restraining the defendants, or any of them, from in any way transferring the shares of stock in the *Universal Granite Quarries Company* herein referred to.

"*Second,* that the said *Armstrong* and *Sloan* be deemed and decreed constructive trustees of the said shares of stock for the purpose of carrying out the terms of the agreement between the plaintiff and the *Wisconsin Granite Company* hereinbefore referred to, or, in the alternative, that said contract be rescinded, and that the defendants be ordered to return the stock to this plaintiff.

"*Third,* that pending this suit a receiver be appointed for the said *Universal Granite Quarries Company,* a corporation, to the end that the rights of this plaintiff may be protected.

"*Fourth,* for such other and further relief as to the court shall seem fitting and proper.''

To such complaint the defendants severally demurred on the grounds (1) that the complaint does not set forth facts sufficient to constitute a cause of action against said defendants, and (2) that several causes of action have been improperly united; and from an order overruling the demurrers they appealed.

For the appellants there was a brief by *Lines, Spooner & Quarles,* and oral argument by *Howard A. Hartman,* all of Milwaukee.

*Harry V. Meissner* of Milwaukee, for the respondent.

VINJE, C. J.   It is urged that the complaint fails to state a cause of action against the *Wisconsin Granite Company* because it appears that when the contract was terminated on November 30, 1921, by a vote of the *Universal Granite Quarries Company* the *Wisconsin Granite Company* had fully performed.   A number of other grounds of failure to state a cause of action based upon the facts of the termination of the contract and its indefiniteness are also urged, but we shall not consider these because it appears that the

contract was for a definite period that has not yet expired, and it also appears that they operated under it for about two years and no suggestion is made that there was the least difficulty because of indefiniteness.

We think the gist of the controversy is the validity of the corporate action terminating the contract. If that be valid plaintiff's right would probably be limited to a return of his stock. If it be not valid the contract must still be held to be in force with such rights as it gives to each party. It seems quite clear that a contract between plaintiff as an individual and the defendant *Wisconsin Granite Company* was made; that it resulted in a benefit to the *Universal Granite Quarries Company,* whose stock was all owned by plaintiff—therefore though not legally yet practically for the benefit of plaintiff. As a guaranty that two thirds of the profits of the *Universal Granite Quarries Company* would be turned over to the *Wisconsin Granite Company,* plaintiff deposited with *Sloan,* for the benefit of the *Wisconsin Granite Company,* two thirds of the stock of the *Universal Granite Quarries Company.* This was to be held by the *Wisconsin Granite Company* as collateral security for the performance by plaintiff of the contract.

It appears from the complaint that the stock was transferred to *Sloan* on the books of the company, and afterwards with the consent of plaintiff it was transferred to the defendant *Armstrong.* It also appears that nothing was said or agreed between the parties as to who should vote the stock. Assuming that the right to vote the stock in such case passes to the pledgee because the books show him to be the legal holder of the stock, which is *prima facie* evidence that he is entitled to vote it (7 Ruling Case Law, 348), still it does not follow that a vote cast for a termination of the contract was a valid vote. To so hold would be to permit a pledgee to destroy the very purpose of the pledge. The stock was transferred as collateral security for the performance of a contract by the plaintiff, and it must have been the

Burke v. Universal Granite Quarries Co. 180 Wis. 520.

intent of both parties when the stock was so transferred that the contract should be performed, not destroyed. It therefore clearly appears that the vote cast to terminate the contract was cast in direct violation of the intent of the parties and of the purpose of the pledge. Its effect was to destroy the subject matter of the contract, not to carry it out as was intended. Such use of stock deposited as collateral cannot be tolerated in law or in equity. It is a distinct breach of a clearly implied contract to hold inviolate the subject and purpose of the trust.

It follows that the contract is still in force and effect and that *Armstrong* holds the stock in a trust capacity as security for its faithful performance by the plaintiff. The complaint therefore states a cause of action against the *Wisconsin Granite Company* for a reinstatement of the contract and against *Armstrong* for an injunction restraining him from disposing of the stock and for a declaration that he holds it as collateral security for the performance of the contract.

Since it appears from the complaint that the stock was transferred from *Sloan* to *Armstrong* with the consent of the plaintiff and that *Sloan* makes no claim to the stock, no cause of action is stated against him, and his demurrer should be sustained.

This is a suit in equity growing out of a series of transactions affecting all the defendants. It is not essential that the relief prayed against each should be identical in order that there be no misjoinder of causes of action. *Simon v. Weaver*, 143 Wis. 330 (127 N. W. 950), and cases cited on page 342.

It is also obvious that the *Universal Granite Quarries Company* as its directorate was constituted would not join with plaintiff, so it was properly made a party defendant.

*By the Court.*—Order as to defendants *Wisconsin Granite Company, Universal Granite Quarries Company,* and *Armstrong* affirmed, and as to defendant *Sloan* reversed, and cause remanded for further proceedings according to law.